JOSE CAMARILLO, APPELLEE, V. IOWA BEEF PROCESSORS, INC., APPELLANT.

266 N. W. 2d 917

Filed June 21, 1978. No. 41763.

Smith, Smith & Boyd, for appellant.

Roman de la Campa, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

This is an appeal from a decision of a three-judge panel of the Workmen's Compensation Court. It affirmed in part and modified in part a decision of the one-judge court. On September 30, 1975, the plaintiff Jose Camarillo was an employee of the defendant-appellant Iowa Beef Processors, Inc. The plaintiff was engaged in pulling tenderloins at the defendant's plant at Dakota City, Nebraska. The job involved the use of a hook in the left hand and a knife in the right hand, pulling the tenderloin and cutting it from the carcass. Plaintiff testified that he had worked for more than a year at this job. He pulled approximately 600 to 700 tenderloins a day. The plaintiff describes his injury as follows: "I get the last piece of meat, so you have to be done with the last piece so you can go out to break. And then I get one that was real heavy and halfway froze, and I get close to pull with my hand, and I get close with that, and when I pull you have to open so it don't cut the meat * * *.

"So I went to break and when I came back I just started feeling, oh, like a sharp pain there, and I told the foreman if I can go to see the nurse. He told me no, because he don't have nobody to relieve me 'til — Well, sometime that day he let me go. So I went to see the nurse and she say, 'Well, you better see the doctor.' "

The plaintiff was examined by Dr. E. M. Mumford. The doctor's diagnosis was a "Mild carpal tunnel syndrome, perhaps also ulnar nerve compression, secondary to synovitis which indirectly was due to aggravation of pre-existing old avulsion fracture of the tip of the ulna associated with some distal ulnar radial sprain." The plaintiff continued to be treated by Dr. Mumford until October 1976. In Jan-

uary 1977, Dr. Mumford made the following notation on a statement for services: "PROGRESS REPORT: Released to return to work. No Restrictions. Need not return unless having trouble." On May 19, 1976, Dr. Mumford reported: "This patient has no permanent partial disability as a result of the sprain of his radius and ulna, however, he does have a congenital wrist which could continue to cause him symptoms."

The plaintiff, who testified that he had worked continually except for short periods of time for lay-offs and a short period of disability after the initial incident, consulted Dr. John J. Dougherty, an orthopedist. Dr. Dougherty first saw the plaintiff on November 11, 1976. He testified that the plaintiff stated that he had injured his left wrist in September of 1975 while pulling meat. The plaintiff was complaining of pain in his wrist, especially if he twisted it. The X-rays disclosed that the tip of the ulnar styloid was loose and a small piece of bone was discoverable in the fracture. After the application of first a splint, and then a cast, provided no apparent relief, surgery was recommended. Subsequently a surgical process was undertaken by Dr. Dougherty which removed the broken piece of bone from the wrist. Dr. Dougherty testified that in his opinion the fracture of the bone fragment was an old injury, at least 2 years old at the time of his first examination of the plaintiff in November 1976. He further testified that the plaintiff had a permanent partial disability of the wrist of 10 percent. Based on this evidence, Dr. Dougherty further testified in response to the question of the plaintiff's counsel: "I have only one final question, Doctor. You mentioned that the cause of the sickness of Mr. Camarillo could either be the congenital condition of his wrist or an accident; Is that correct? A. Yes. Q. Do you think it could be a possible combination of both? A. Oh, I think that's a possibility, yes." Dr. Dougherty fur-

ther testified on cross-examination: "Q. So if you were gripping something like a meat hook with a hand and pulling on it, is it likely that you would cause a break or a fracture of that type? A. Well, I'd guess I'd have to answer not likely."

The single judge found that the plaintiff had suffered an accidental injury on September 30, 1975, and was entitled to compensation for a period of 7 3/7 weeks for temporary total disability which had previously been paid by the defendant and was entitled to be paid for all medical services of Dr. E. M. Mumford. The single judge further found that the evidence was insufficient to sustain a finding that the accident aggravated plaintiff's congenital condition to the point of disability and need for surgical treatment. The judge's decision was based on the principle that "this court may not engage in speculation or conjecture as to the precipitating cause of the plaintiff's surgery."

On appeal, the majority of the three-man court found that: "In spite of Dr. Dougherty's testimony, the evidence was uncontradicted that the plaintiff prior to September 30, 1975, used his left wrist extensively in his work operations and had no difficulty with it whatsoever. Subsequent to the incident on September 30, 1975, when, according to the plaintiff's testimony, he felt a sharp pain in his left wrist while pulling beef tenderloins, plaintiff experienced continuous pain in his left wrist, which ultimately required the surgery performed by Dr. Dougherty and produced a 10 per cent permanent partial disability of the left arm." Judgment was entered accordingly.

In his dissent, Judge Novicoff stated that when the plaintiff returned to work on December 1, 1975: "* * * there is no evidence that any disability in the plaintiff's left wrist was due to, caused, or aggravated by the sprain he suffered on or about September 30, 1975. To the contrary, all of the evidence in-

dicates that the plaintiff's problems with his left wrist were due to a ganglion cyst not associated with a sprain and/or a loose piece of bone which probably occurred nine months prior to the September 30, 1975, incident, and/or a congenital condition in the plaintiff's wrist. There is no evidence whatsoever that any of these conditions were caused or aggravated by the September 30, 1975, incident." We agree with the dissent and reverse the judgment and remand the cause to the compensation court for reinstatement of the judgment of the one-judge court.

The entire evidence on which the plaintiff seeks to rely is that of the testimony of Dr. John J. Dougherty. In Welke v. City of Ainsworth, 179 Neb. 496, 138 N. W. 2d 808, this court held that an award of workmen's compensation benefits cannot be based alone on speculation and conjecture, and, if an inference favorable to the claimant can only be reached on the basis thereof, then he cannot recover. At issue in that case was the causation of a herniated disk which was alleged to have been caused by a scuffle between the plaintiff, a police officer of the City of Ainsworth, and a person whom he was arresting some 8 months prior to the first discovery of the herniated disk. The opinion of Dr. Shiffermiller, the physician who originally treated the plaintiff-officer, was found by the court to be sufficient to justify a finding for the plaintiff. The testimony of the doctor stated that in his "opinion * * * disability was probably due to a scuffle." After reviewing the definition of "probable," a majority of this court found the proof sufficient to sustain the findings of the compensation court. Judge Carter dissented, saying: "The issues of this case have been decided many times by this court, making it unnecessary to cite cases other than our own. As the cases cited show, our interpretation on the use of possibility, probability, and speculation as evidence is of long

standing and has met with apparent legislative approval."

The evidence in this case on behalf of the plaintiff does not even meet the standard of "probability" in Welke v. City of Ainsworth, *supra*. An award for permanent disability cannot be based on mere possibilities. Hamilton v. Huebner, 146 Neb. 320, 19 N. W. 2d 552, 163 A. L. R. 1.

The judgment of the three-man compensation court is reversed and the cause remanded with directions to reinstate the decision of the one-judge compensation court.

REVERSED AND REMANDED WITH
DIRECTIONS.